UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DUANE H. GARVAIS, | |
|     Plaintiff, | NO. CV-03-0290-JLQ |
|   vs. | |
| GREG CARTER, et al., | MEMORANDUM OPINION AND ORDER **GRANTING** DEFENDANT CARTER, WYNECOOP, AND MATT'S MOTION FOR SUMMARY JUDGMENT |
|     Defendants. | |

BEFORE THE COURT is Defendants Carter, Wynecoop, and Matt's Motion for Summary Judgment.  (Ct. Rec. 77).  **Everett B. Coulter** represents the Defendants Greg Carter, Ted Wynecoop, and Bill Matt.  **Jose Angel Silva, Jr.** represents the Plaintiff Duane H. Garvais.

<u>INTRODUCTION</u>

This action is  brought by Plaintiff Garvais against Defendants United States of America, Greg and Jane Doe Carter, Ted and Jane Doe Wynecoop, Bill and Jane Doe Matt, and Unnamed Defendants A-Z. (Ct. Rec. 70).  Garvais, a former Bureau of Indian Affairs ("BIA") police officer on the Spokane Indian Reservation, alleges that the Defendants (1) conspired to have him transferred from the Spokane Indian Reservation and removed from the BIA, (2) conspired to have him incarcerated by concocting false charges, and (3) retaliated, threatened, and intimidated him and his family by, among other things, bombing his residence.  On the basis of these allegations, Garvais brings claims pursuant to Title VII, 42 U.S.C. §§ 1981, 1983, 1985, 1986, and *Bivens*.  This motion for summary judgment as to all claims is brought by the individually named Defendants, Carter, Wyncoop, and Matt.  (Ct. Rec. 77).  The United States and the

1   Unnamed Defendants are not included in this motion.  Garvais concedes that the Title VII
2   claim is brought against the United States rather than against the individually named
3   Defendants, but objects to the remainder of the Defendants' motion.

FACTUAL BACKGROUND

5       As this is the Defendants' motion, the evidence and inferences arising therefrom
6   are viewed in the light most favorable to Garvais.  The facts are undisputed except where
7   otherwise stated.
8       During the period of alleged conduct pertinent to the Second Amended Complaint,
9   Duane Garvais and the individually named Defendants – Greg Carter, William Matt, and
10  Theodore Wynecoop – were law enforcement officers with the BIA, on the Spokane
11  Indian Reservation.  (Dfts. St. Fact ¶¶ 1-2).  In 2001, Defendants Matt and Wynecoop
12  removed a car stereo from a Spokane tribal car and placed it in Wynecoop's patrol car.
13  (*Id.* at ¶ 3; Pltf. St. Fact ¶ 2).  According to Garvais, this incident was reported by
14  Spokane Tribal Probation Officer Andrew Matherly, and thereafter District V
15  Commander Edward Naranjo directed Garvais to investigate the incident, along with BIA
16  Special Agents Melville and Turner, from the Billings, Montana office.  (Garvais Decl. ¶¶
17  6-10; Dfts. St. Fact ¶ 8).  In his Declaration, Garvais states that Officer Matt and
18  Wynecoop admitted to taking the stereo, an act which constitutes theft as defined by the
19  Spokane Tribal Law and Order Code, (Garvais Decl. ¶ 12-14), and characterizes this
20  incident as part of widespread criminal activity committed by BIA officers on the
21  Spokane Indian Reservation.  (*Id.* at ¶¶ 15-21).  In their declarations, however,
22  Defendants Matt and Wynecoop  characterize the incident as a "prank" done without
23  criminal intent.  (Matt Decl. ¶ 5; Wynecoop Decl. ¶ 5). Officer Carter denies being
24  involved in the radio incident.  (Carter Decl. ¶ 7).  As a result of the investigation,
25  Wynecoop and Matt were placed on administrative leave with pay for 15 months, and
26  leave without pay for 45 days.  (Dfts. St. Fact ¶ 10).
27      After the investigation, Wynecoop and Matt attended a meeting of the Spokane
28  Tribal Council ("Council").  (*Id.* at ¶ 11).  Garvais alleges in his Second Amended

Complaint and in his Statement of Facts, with no evidentiary support by way of affidavit or declaration, that Defendants Matt and Wynecoop met with the Tribal Council to discredit him and conspired to have him transferred from the Spokane Indian Reservation and removed from the BIA. (Ct. Rec. 70 ¶¶ 2.9, 2.15; Pltf. St. Fact ¶¶ 14). Garvais further alleges, again without additional support, that Defendant Carter was involved in the conspiracy because he knew of the other Defendants' actions and took no steps to prevent the conspiracy. (Pltf. St. Fact ¶ 15). Wynecoop and Matt, however, in their Declarations in support of the Motion For Summary Judgment, claim that they were called before the Council to discuss the investigation into the so-called "prank" and the reasons they had been placed on leave. (Wynecoop Decl. ¶ 8; Matt Decl. ¶ 9). Defendant Carter avers that he was never called before the Spokane Tribal Counsel to provide any information about Garvais in any capacity, including Garvais' investigation. (Carter Decl. ¶ 8).

On November 21, 2001, following Wynecoop and Matt's appearance before the Council, the Council passed Spokane Resolution 2002-51 requesting Garvais' removal from the Spokane Agency because, *inter alia*, the Council was concerned about Garvais' use of tribal funds for undercover drug purchases, his poor performance as an investigator, and his investigation into Wynecoop and Matt's so-called "prank." (Dfts. St. Fact ¶ 14; Dfts. Exh. A). After the Council passed the November 21, 2001 resolution, the BIA transferred Garvais to the Northern Cheyenne Reservation and thereafter to the Wind River Reservation. (Dfts. St. Fact ¶ 22). All three Defendants – Matt, Carter, and Wynecoop – deny conspiring to have Garvais transferred from the Spokane Indian Reservation, discriminating against Garvais, and retaliating against Garvais. (Matt Decl. ¶ 10; Carter Decl. ¶ 10; Wynecoop Decl. ¶¶ 10, 13-14).

Meanwhile, Garvais was the subject of a criminal investigation for incidents that allegedly occurred while he worked on the Spokane Indian Reservation. (Dfts. St. Fact ¶ 23). Garvais alleges, without affidavit or evidentiary support, that the Defendants conspired to have him wrongly incarcerated by concocting false charges "relating to the

ORDER - 3

handling of funds used in undercover narcotic investigations[.]" (Ct. Rec. 70 ¶2.16).  The United States declined to prosecute Garvais, but the alleged offenses were the basis of a Spokane Tribal Court criminal complaint against him for alleged violations of tribal law. (Dfts. St. Fact ¶ 24; Pltf. St. Fact ¶ 26).  The Tribal Court issued an arrest warrant for Garvais, and Defendant Matt was assigned to execute the warrant which, according to Officer Matt, was the extent of his involvement in this matter.  (Matt Decl. ¶ 13-14). Matt avers that he was not involved in the criminal charges filed against Garvais in Tribal Court, did not provide the Prosecutor with any information that led to the filing of the charges, and did not arrest him.  (*Id.*).  In August of 2003, pursuant to the warrant, Colville Tribal Police Detective Kevin Anderson and Commander Mike Kessler arrested Garvais in Omak, Washington. (Pltf. St. Fact ¶¶ 25, 27; Dfts. St. Fact ¶ 33).  Garvais was allegedly held for over four days in the Okanagan County Jail before being released. (Pltf. St. Fact ¶¶ 25, 29).

In the meantime, on August 12, 2003, Garvais petitioned this court for a Writ of Habeas Corpus challenging the jurisdiction of the Tribal Court on the basis that he was not an enrolled member of any federally recognized tribe and not an "Indian."  (*See In Re: Duane Garvais*, No. CS-03-0291-JLQ).  Ultimately, Garvais succeeded on his Habeas petition, although his non-Indian legal position resulted in the Department of the Interior investigating his appointment and determining that he had mistakenly been given an "Indian Preference" for hiring.  (Dfts. St. Fact ¶ 38).  According to Defendants, for the aforementioned reason, in February 2004, Garvais was removed from his position with the BIA.  (*Id.* at ¶ 37).

Garvais claimed in his Second Amended Complaint, but not in his Declaration resisting the summary judgment motion, and again without support in the record, that he "and his family, have been the victims of retaliation, threats, and intimidation including the bombing of [his] residence."  (Ct. Rec. 70 ¶ 2.14).

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no

dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. United States Dept. of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1975). Rather, the opposing party must come forward with specific facts showing that there is a genuine issue for trial. *Id*.

<u>DISCUSSION</u>

**I. <u>42 U.S.C. § 1981:</u>**

42 U.S.C § 1981 states in relevant part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." To bring a claim under section 1981, the Plaintiff must sufficiently allege intentional discrimination on account of race. *Evans. v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989); *see also Doe v. Kamehamea Schools*, 416 F.3d 1025, 1038 (9th Cir. 2005) (stating "intentional discrimination must be established in order to sustain a . . . 1981 challenge"); *General Bldg. Contractor Ass'n v. Penn.*, 458 U.S. 375, 390 (1981) (concluding that 42 U.S.C. 1981 "can be violated only by purposeful discrimination."). A failure to do so will result in the dismissal of the claim. *Evans*, 869 F.2d at 1344; *see also Imagineering Inc. v. Kiewitt Pacific. Co.*, 976 F.2d 1303, 1313 (9th Cir. 1992) (stating that under section 1981

1  the Plaintiff must "at least allege facts that would support an inference that defendants

2  intentionally and purposefully discriminated against them").

3      Garvais offers no factual assertions to support a claim of racial bias under section

4  1981.  Garvais' Second Amended Complaint and his response to Defendants' motion for

5  summary judgment fail to mention race, and neither allege intentional racial

6  discrimination.  Instead, Garvais alleges that the Defendants interfered with his

7  contractual rights by conspiring to have him reassigned, transferred, and fired from his

8  position with the Bureau of Indian Affairs on the Spokane Indian Reservation in

9  retaliation for performing duties of his employment. (Ct. Rec. 70 ¶ 3.4).  Even liberally

10  construed, Garvais fails to allege that the Defendants' conduct was based on an intent to

11  discriminate due to his race.  Therefore, the Defendants' motion for summary judgment

12  as to Garvais' section 1981 claim must be **GRANTED**.

13  **II.  Title VII:**

14      Title VII prohibits employment discrimination based on "race, color, religion, sex,

15  or national origin.  42 U.S.C. §§ 2000e-2, 2000e-16; *Burlington Northern and Santa Fe*

16  *Railway Co. v. White*, 126 S.Ct. 2405, 2411 (2006).  It also prohibits retaliation against an

17  employee for complaining about or contesting a practice prohibited under Title VII.  42

18  U.S.C. 2000e-3(a); *Burlington Northern*, 126 S.Ct. at 2411.  It is widely recognized that

19  Title VII is the exclusive remedy for claims of discrimination in federal employment.

20  *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 833 (1976).  In applying *Brown*, the Ninth

21  Circuit has noted that "*Brown* did not distinguish between a suit against the government

22  or its individual employees; rather, the court concluded that congressional intent

23  underlying § 2000e-16 was to create 'an exclusive, preemptive administrative and

24  judicial scheme for the redress of federal employment discrimination.'"  *White v. Gen.*

25  *Serv. Admin.*, 652 F.2d 913, 916-17 (9th Cir. 1981) (quoting *Brown*, 425 U.S. at 829).

26  However, in *Kotarski v. Cooper*, 799 F.2d 1342, 1345 (9th Cir. 1986) (citation omitted),

27  *vacated and remanded on other grounds*, 487 U.S. 1212 (1988); *after remand*, 866 F.2d

28  311 (9th Cir.1989), the Ninth Circuit noted that Title VII does not preclude separate

remedies for unconstitutional action other than discrimination based on race, sex, religion or national origin.  Also, "Title VII requires that in a civil action alleging employment discrimination by the government, 'the head of the department, agency, or unit, as appropriate, shall be the defendant.'"  *Vineratos v. Dep't of the Air Force*, 939 F.2d 762, 772 (9th Cir.1991) (quoting 42 U.S.C. § 2000e-16(c));  *See also Greenlaw v. Garrett*, 59 F.3d 994, 1001 (9th Cir.1995) ("Under Title VII there is no personal liability for employees, including supervisors [.]").

        As Garvais does not allege an act of discrimination based on race, religion, sex or national origin, and the individually named Defendants are not the proper Defendants under such an action, summary judgment on the Title VII claim against the individual Defendants must be **GRANTED.**  However, because Garvais' claims are based upon unconstitutional conduct other than discrimination based on race, sex, religion or nation origin, they are not preempted by Title VII, and may go forward pursuant to alternative causes of action.

## III.  <u>42 U.S.C. § 1983</u>:

        In order to state a claim under section 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting "under color of state law" and (2) the conduct resulted in the deprivation of  a constitutional or federal statutory right. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citing *Parrat v. Taylor*, 451 U.S. 527, 535 (1981)).  Section 1983 relief does not apply to purely private conduct, *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999), actions taken under color of federal law, *Russell v. U.S. Dept. of the Army*, 191 F.3d 1016, 1019 (9th Cir. 1999), nor to actions brought by persons alleging deprivation of constitutional rights under color of tribal law.  *Evans v. McKay*, 869 F.2d 1341, 1347 (9th Cir. 1989).

        Garvais has not stated a claim under section 1983 against the individual Defendants because he has alleged no *state* action.  Garvais' Second Amended Complaint merely asserts that Defendants acted under color of state law when committing the alleged violations of Plaintiff's rights.  At the time the allegedly wrongful acts occurred,

  
however, the Defendants were employees of the BIA, a federal agency under the Department of the Interior.  Therefore, the Defendants' motion for summary judgment as to Garvais' 42 U.S.C. § 1983 claim is **GRANTED.**

## IV.  <u>42 U.S.C. §§ 1985 and 1986</u>:

 Section 1985 provides a civil action for damages caused by conspiracies that interfere with civil rights.  However, "the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005) (quoting *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989)).  Garvais' section 1985 claim necessarily fails because it is predicated on the same allegations that are insufficient to state a claim under section 1983.

Moreover, Garvais' section 1986 claim fails for lack of a viable section 1985 claim.  Section 1986 provides a cause of action against "every person who knows of an impending violation of section 1985 but neglects or refuses to prevent the violation." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1040 (9th Cir. 1990) (citations omitted). Therefore, a violation of section 1986 depends on the existence of a valid claim under section 1985.  *Id.*; *see also McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990) (recognizing that "[a] claim can be stated under § 1986 only if the complaint states a valid claim under § 1985") (citing *Karim-Panahi v. L.A. Police Dep't.*, 839 F.2d 621, 626 (9th Cir. 1988).  Therefore, summary judgment is **GRANTED** on the section 1985 and 1986 claims.

## V.  *Bivens*:

Because the Defendants were all federal employees acting under color of federal law during the period of alleged misconduct, Garvais' cause of action is properly brought pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).  *See Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) (explaining that "[a]ctions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under

1  § 1983 by a federal actor under *Bivens*").

2      *Bivens* provides a private cause of action for constitutional tort claims against

3  federal government officials in their individual capacities, *Bivens*, 403 U.S. at 396-97,

4  and since *Bivens*, the United States Supreme Court has recognized an implied damages

5  remedy under the  Fifth Amendment's Due Process Clause. *Corr. Servs. Corp. v.*

6  *Malesko*, 534 U.S. 61, 67 (2001) (citing *Davis v. Passman*, 442 U.S. 228, 248-49 (1979)).

7  However, *Bivens*-style remedies are limited and the Supreme Court has "cautioned

8  against extending *Bivens* into new areas or recognizing new rights or claims." *Libas LTD*

9  *v. Carillo*, 329 F.3d 1128, 1130 (9th Cir. 2003) (citing *Malesko*, 534 U.S. at 68-70;

10  *Schweiker v. Chilicky*, 487 U.S. 412, 421-23 (1988); *Bush v. Lucas*, 462 U.S. 367, 373-74

11  (1983)).

12      In exercising this caution, both the United States Supreme Court and the Ninth

13  Circuit have consistently held that district courts lack jurisdiction to hear *Bivens* actions

14  when allegedly unconstitutional conduct falls within the broad confines of the Civil

15  Service Reform Act, 5 U.S.C. § 2302  ("CSRA"). *See Bush*, 462 U.S. at 390 (holding

16  that the CSRA precluded an employee's *Bivens* action against his supervisor for violating

17  his First Amendment rights); *Mahtesian v. Lee*, 406 F.3d 1131, 1134 (9th Cir. 2005)

18  (stating that "[i]f the conduct . . . falls within the scope of the CSRA's prohibited

19  personnel practices, then the CSRA's administrative procedures are his only remedy")

20  (quoting *Orsay v. United States Dept. of Justice*, 289 F.3d 1125, 1128-29 (9th Cir.

21  2002)); *Blankenship v. McDonald*, 176 F.3d 1192, 1195 (9th Cir. 1999) (holding that the

22  CSRA precluded an employee's *Bivens* action for violations of First and Fifth

23  Amendment, even though the employee did not have an effective remedy); *Saul v.*

24  *United States*, 928 F.2d 829, 835-43 (9th Cir. 1991) (holding that the CSRA precludes

25  both constitutional and common-law tort claims).  This is the case even when the statute

26  provides no alternative remedy. *Orsay*, 289 F.3d at 1128-29 (citing *Collins v. Bender*,

27  195 F.3d 1076, 1079 (9th Cir. 1999)).

28      However, to invoke the CSRA defense, the alleged conduct must fall within one of

ORDER - 9

the eleven statutory definitions of "personnel action." *Mahtesian*, 406 F.3d at 1134 (citing *Orsay*, 289 F.3d at 1131). A "personnel action" is defined as "any appointment, promotion, disciplinary or corrective action, detail, transfer, or reassignment, reinstatement, restoration, reemployment, performance evaluation, decision concerning pay or benefits and the like, decision to order psychiatric examination, and any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(i)-(xi); *Orsay*, 289 F.3d at 1131. While the CSRA's language is broad and courts will take an expansive reading of the phrase "personnel action," *Saul*, 928 F.2d at 834, if the alleged conduct does not fall within one of the CSRA's eleven categories of "personnel action," other causes of action are not preempted. *See Bush*, 462 U.S. at 386 n. 28 (wiretapping, warrantless searches, or uncompensated takings); *Orsay*, 289 F.3d at 1131 (aiming a loaded weapon at a person); *Collins*, 195 F.3d at 1079-80 (warrantless search of DEA agent's home for privately owned firearms); *Brock v. United States*, 64 F.3d 1421, 1424-25 (9th Cir. 1995) (rape and physical abuse).

Garvais argues that regardless of the alleged conduct, his *Bivens* claims should not be precluded because the CSRA only applies to "supervisors" and his claims are brought against co-workers. The CSRA, however, applies to "[a]ny employee who has authority to take, recommend, or approve any personnel action . . . with respect to an employee in . . . a covered position in an agency. 5 U.S.C. § 2302(a)(2)(A)-(B); *Orsay*, 289 F.3d at 1131. While some courts may use "supervisor" as shorthand, and actions under the CSRA are generally brought against supervisors, the Ninth Circuit has applied the CSRA more broadly, to include the conduct of fellow employees. *See Mahtesian*, 406 F.3d at 1134-35 (applying the CSRA to a co-worker who "had authority to recommend or not recommend [a person] for employment"); *Orsay*, 289 F.3d at 1131 (considering whether a co-worker's conduct, which involved pointing a loaded gun at a fellow co-worker, constituted "personnel action," without analyzing whether the statute applied to co-workers); *Collins*, 195 F.3d at 1077-80 (holding that warrantless search of DEA agent's home by fellow DEA agents was not "personnel action," without first considering

ORDER - 10

whether the CSRA even applied to co-workers).   This view of the CSRA is buoyed by the Fourth Circuit's opinion in *Hall v. Clinton*, 235 F.3d 202, 205-06 (4th Cir. 2000), where the court held that the CSRA is the exclusive remedy for a Plaintiff's *Bivens* and statutory claims "arising from *the federal employment relationship.*" (emphasis added). The court reasoned that "[a]llowing a federal employee to sue those people who may have influenced a supervisor's decision to take a certain personnel action 'would create an obstacle to the attainment of Congress's goal of unifying challenges to federal personnel decisions in a single administrative forum.'"   *Id.* at 206 (quoting *Broughton v. Courtney*, 861 F.2d 639, 641 (11th Cir. 1988).  Based on the foregoing, this court is not persuaded by Garvais' argument that the CSRA only applies to "supervisors" and therefore cannot preempt his claims.

Therefore, the determinative issue this court must address is whether the Defendants' alleged conduct constitutes "personnel action" as defined by the CSRA. Although couched in terms of an alleged "conspiracy" among co-worker Defendants, Garvais complains of being transferred from the Spokane Indian Reservation and ultimately terminated from his position with the BIA in violation his Fifth Amendment due process rights.  Transfers and terminations are "personnel action" under the CSRA, as they fall under the category of "detail, transfer, or reassignment" or more generally as "significant change in duties, responsibilities, or working conditions." 5 U.S.C. §§ 2302(a)(2)(A)(iv) & (xi).  As such, Garvais' *Bivens* claim based on the allegation that Defendants conspired to have him transferred and thereafter terminated is preempted by the CSRA and the Defendants' summary judgment motion as to the transfer and termination allegation is **GRANTED.**

The remaining conduct which could form the basis for Garvais' *Bivens* claim -- conspiring to have Garvais incarcerated by concocting false charges, and retaliating, threatening, and intimidating Garvais and his family by, among other things, bombing his residence -- falls outside the scope of the CSRA, although Garvais has failed to come forward with specific facts showing that there are genuine issues for trial.  In each of their

declarations, Defendants Carter, Wynecoop, and Matt deny these allegations. Defendant Carter avers that he did not "provide information regarding [Garvias] and [Garvais'] conduct" to the Spokane Tribal Council, did not "attend any Spokane Tribal meeting in respect to [Garvais'] work on the Spokane Tribe Reservation," and did not "discriminate against [Garvais] or retaliate against [Garvais]." (Carter Decl. ¶¶ 8, 10). Defendant Wynecoop similarly states that he "never discriminated against Duane Garvais," nor did he "retaliate against the [Garvais] in any way." (Wynecoop Decl. ¶¶ 11, 13). Wynecoop also states that when he was "called to appear before the Spokane Tribal Council in the fall of 2001," he was only "questioned about the status of the investigation regarding the prank and why [he] was on administrative leave and not working full time as a Spokane Tribal Police Officer." (*Id*. at ¶8). According to Defendant Matt's declaration, Matt did not "take any act to discriminate against [Garvais] or in any manner retaliate against him." (Matt Decl. ¶ 10). In addition, Defendant Matt's declaration includes the following: "I was not involved in providing information in support of the criminal charges filed in the Spokane Tribal Court. I was not the complaining witness and had no involvement other than I was assigned to execute the warrant for the arrest of Duane Garvais." (*Id.* at ¶ 14).

By submitting declarations denying the allegations contained in Garvais' Second Amended Complaint, the Defendants shifted the burden to Garvais to present an issue for trial. In response, Garvais filed his own affidavit. (Ct. Rec. 90). Garvais' affidavit includes nothing about the individually named Defendants allegedly conspiring to have him incarcerated. In fact, Garvais alleges that Defendants met with the Spokane Tribal Council on November 21, 2001, and he was arrested pursuant to a tribal warrant in August of 2003, almost two years later. His affidavit includes nothing that would connect these two events, nor anything about the Defendants conspiring to concoct false charges, nor anything that might indicate that the Defendants ever met with the Spokane tribal prosecutor. Moreover, Garvais' affidavit includes nothing about the Defendants allegedly retaliating, threatening, or intimidating him and his family, and nothing about

ORDER - 12

the alleged bombing of his residence.  Garvais fails to provide any factual support for his allegations, even in his own affidavit, and has thereby failed to show that any factual issues exist  for trial.  Therefore, summary judgment must be **GRANTED** as to the allegations surrounding Garvais' August of 2003 arrest and the allegations that Defendants retaliated, threatened, and intimidated Garvais and his family by, among other things, bombing his residence.

<u>CONCLUSION</u>

1.  Defendants Carter, Wynecoop, and Matt's motion for summary judgment regarding Plaintiff's 42 U.S.C. § 1981 claim is **GRANTED**

2.  Those Defendants' motion for summary judgment regarding Plaintiff's Title VII is **GRANTED.**

3.  Those Defendants' motion for summary judgment regarding Plaintiff's cause of action under 42 U.S.C. § 1983 is **GRANTED.**

4.  Those Defendants' motion for summary judgment regarding Plaintiff's cause of action under 42 U.S.C. §§ 1985 and 1986 is **GRANTED.**

5.  Those Defendants' motion for summary judgment regarding Plaintiff's *Bivens* action is **GRANTED.**

     **IT IS SO ORDERED.**  The Clerk of this court shall enter this Order and forward copies to counsel.

     **DATED** this 3rd  day of August 2006.

<u>s/ Justin L. Quackenbush</u>

JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 13