UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DUANE H. GARVAIS, <br>    Plaintiff, <br>   vs. <br> UNITED STATES OF AMERICA, et al., <br>    Defendants. | NO. CV-03-0290-JLQ <br><br> ORDER GRANTING IN PART AND DENYING IN PART UNITED STATES' MOTION TO DISMISS |

BEFORE THE COURT is the United States' Motion to Dismiss and Memorandum in Support Thereof. (Ct. Rec. 118). Defendant United States of America is represented by Assistant United States Attorney **Robert P. Brouillard**. Plaintiff Duane H. Garvais is represented by **Jose Angel Silva, Jr.** and **Breean L. Beggs**. The motion is noted for hearing without oral argument and oral argument has not been requested by either party.

## INTRODUCTION

This action has been pending since August 12, 2003 and Plaintiff's complaint is on its fourth incarnation. After the court granted Defendants Carter, Wynecoop, and Matt's Motion for Summary Judgment (Ct. Rec. 98) and those Defendants were dismissed from the action, Plaintiff filed a Motion to Amend Complaint (Ct. Rec. 112), which the court, on February 2, 2007, granted with the proviso that no further amendments to the claims and complaints would be allowed (Ct. Rec. 116). Accordingly, Plaintiff's Corrections to Third Amendmended (sic) Complaint for Violations Under Title VII and Other Constitutional Rights ("Third Amended Complaint") (Ct. Rec. 117), filed on March 2, 2007, represents the Plaintiff's final bite at the apple. In his Third Amended Complaint, Plaintiff brings claims based on Title VII, *Bivens*, 42 U.S.C. § 1981, 42 U.S.C. § 1985, the Indian Civil Rights Act, and, while not explicitly pled as a separate cause of action, mentions a claim under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). These claims

ORDER - 1

are brought against Defendants United States of America; Derrick Kempthorn, Director of the Bureau of Indian Affairs ("BIA"); Edward Naranjo, individually and in his official capacity as District Commander of BIA's Office of Law Enforcement; Alfred Peone, individually; Unnamed Defendants A-H, members of the Spokane Trible Business Council in their individual capacities, and; Unnamed Defendants I-Z, including other federal agents, in their individual capacity.

In response to this latest Third Amended Complaint, the Government filed a Motion To Dismiss all the claims brought against the United States as a Defendant. The Government argues that the claims must be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted because Plaintiff's *Bivens*, Indian Civil Rights Act, 42 U.S.C. §§ 1981 and 1985 claims cannot be brought against the United States. The Defendant United States of America also argues that Plaintiff's employment-related claims must be brought pursuant to the Civil Service Reform Act ("CSRA"), and that the claims outside the scope of the CSRA cannot be brought pursuant to the Federal Tort Claims Act ("FTCA").

In response to the pending Motion To Dismiss, Plaintiff filed Plaintiff's Objection to Motion to Dismiss (Ct. Rec. 124), which misses the mark and, rather than addressing the substance of the United States' motion, defends the *Bivens* claims brought against the individually named Defendants.

## BACKGROUND

Despite this being Plaintiff's fourth complaint, the underlying factual allegations have remained relatively unchanged since this action commenced. In 1999, Plaintiff applied under an "Indian Descendant Preference" and was hired by the Bureau of Indian Affairs, Office of Law Enforcement Services, as a Special Agent. He was assigned to District V, on the Spokane Indian Reservation, in the state of Washington. Plaintiff enjoyed a successful career until the alleged events occurred upon which this civil action is based. In 2002, Plaintiff allegedly received information that fellow BIA law enforcement officers were stealing car stereo equipment from the Spokane Tribe's

ORDER - 2

probation vehicles, were receiving stolen property, and were using and selling marijuana on and off duty. Plaintiff reported this information to District V Commander Edward Naranjo and to BIA Internal Affairs, and was directed to investigate. According to the Plaintiff, he found a stolen car stereo inside BIA Agent Theodore Wynecoop's patrol car. Plaintiff arrested Wynecoop and later, in a tape recorded confession, Wynecoop admitted to stealing the stereo with the help of BIA Agent William Matt. Pending the outcome of the investigation, Agents Matt and Wynecoop were placed on administrative leave.

Plaintiff believes that shortly thereafter, a secret meeting of Agents Matt, Wynecoop, Greg Carter, and others resulted in the Spokane Tribal Business Council passing a resolution that characterized the officers' criminal conduct as a "prank" and demanded that Plaintiff be investigated and removed from his position on the Spokane Indian Reservation. Thereafter, Commander Naranjo met with tribal leaders, while Plaintiff's request to meet with the Spokane Indian Tribal Council was denied. Ultimately, Naranjo directed Plaintiff to sell his home and reassigned Plaintiff to an Indian reservation in Wyoming. The reassignment caused Plaintiff to be away from his family for almost a year, which Plaintiff alleges caused his marriage to fail.

Plaintiff further alleges that Defendants conspired to have him wrongfully incarcerated by concocting false charges "relating to the handing of funds used in undercover narcotic investigations" and making him the subject of a criminal investigation. The United States Attorney's office, after its own investigation, issued a 10-page letter declining to prosecute the Plaintiff and blaming Commander Naranjo's mismanagement and accounting failures. However, after the United States refused to prosecute, Plaintiff alleges that Defendants wrongfully directed Spokane Tribal Prosecutors Loraine Parlounge and Margo Hill to file a false criminal complaint against Plaintiff for alleged violations of tribal law. As a result, the Spokane Tribal Court issued an arrest warrant.

On or about May 2003, unknown BIA officers, in cooperation with Stevens County Sheriff Deputy Craig Martin, attempted to execute the Spokane Tribal arrest

ORDER - 3

warrant at Plaintiff's off-reservation residence located in Nine Mile Falls, Stevens County, Washington. During that attempt, the officers threatened, intimidated, and screamed at Plaintiff's nephew, Deacon Sullivan, for over an hour, spit at his feet, and stated they would return after getting a "State of Washington Arrest Warrant," at which point they would "kick the door in and everybody was going to jail." Also during this period, Plaintiff claims he and his family were victims of retaliation, threats, and intimidation, including the bombing of his residence on the Spokane Indian Reservation, and the bombing of his residence located in Nine Mile Falls.

Finally, in August 2003, Colville Tribal Police Detective Kevin Anderson and Commander Mike Kessler arrested Plaintiff in Omak, Washington. Plaintiff was incarcerated for four to five days in the Okanogan County Jail and then transferred to the Federal Detention Center located on the Spokane Indian Reservation and held for another three to five days. On August 12, 2003, Plaintiff petitioned this court for a Writ of Habeas Corpus challenging the jurisdiction of the Spokane Tribal Court on the basis that he was not an enrolled member of any federally recognized tribe and not an "Indian." (*See In Re: Duane Garvais*, No. CS-03-0291-JLQ). Plaintiff succeeded on his habeas petition, although his non-Indian legal position resulted in the Department of the Interior investigating his appointment and determining that he had mistakenly been given an "Indian Preference" for hiring, rather than a "Indian Descendant Preference" under which Plaintiff claims he applied. Accordingly, in February 2004, Plaintiff was removed from his position with the BIA, despite hundreds of other Federal employees, hired based upon the same "Indian Descendant Preference," continuing to work for the Department of Interior, including current District V Commander Mathew Prior.

## STANDARDS GOVERNING MOTION TO DISMISS

Defendant moves to dismiss the claims contained in Plaintiff's Third Amended Complaint pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

**I.  Rule 12(b)(1):**

ORDER - 4

In reviewing a 12(b)(1) motion to dismiss attacking the existence of subject matter jurisdiction as a matter of law, the allegations in a plaintiff's complaint are taken as true. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir.2005). This is distinguished from a 12(b)(1) motion asserting that the allegations on which jurisdiction depends are not true as a matter of fact, in which there is no presumption of truth to plaintiff's allegations and the court may resolve factual disputes. *Thornhill Pub. Co. v. GTE*, 594 F.2d 730, 733 (9th Cir.1979) (citations omitted). In such case, the moving party may "submit affidavits or any other evidence properly before the court" to attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency. *Assoc' of Am. Med. Coll. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.* Where "the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment . . ." *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir.1987). Under this standard, the motion should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Casumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001) (citation omitted). Because "federal courts are courts of limited jurisdiction . . . [i]t is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kekkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

**II. Rule 12(b)(6):**

In considering a motion to dismiss under Rule 12(b)(6), the challenged complaint is construed liberally in favor of the plaintiff, and all factual allegations set forth in the complaint are accepted as true. *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004). However, a complaint, or portion thereof, will be dismissed for failure to

state a claim upon which relief may be granted if Plaintiff cannot establish "any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1968-69 (May 21, 2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.* at 1964-65 (citations and internal quotation marks omitted; bracket in original). Instead a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . ." *Id.* at 1965 (internal citations omitted). In other words, a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

## ANALYSIS

**I. Claims Barred By Sovereign Immunity:**

  Defendant United States of America moves to dismiss any claims brought pursuant to 42 U.S.C. §§ 1981 and 1985, *Bivens*, and the Indian Civil Rights Act because the claims cannot be brought against the United States, meaning the court lacks subject matter jurisdiction. It is well settled that the United States and federal agencies are immune from suit absent a waiver of sovereign immunity. *See, e.g., FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction" (citation omitted)). Moreover, a waiver of the government's sovereign immunity "'cannot be implied but must be unequivocally expressed.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1983) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)). The terms of the United States' consent to be sued thereby defines a court's jurisdiction to entertain the suit. *Meyer*, 510 U.S. at 475. The burden is on the plaintiff to make such a showing. *Baker v. United States*, 817 F.2d 560, 562 (9th Cir.1987).

ORDER - 6

### i. 42 U.S.C. §§ 1981 & 1985:

Sections 1981 and 1985 do not apply to actions against the United States, and do not provide a basis for finding a waiver of sovereign immunity. *See Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 827 n.8 (1976) (noting that "sovereign immunity would, of course, also bar claims against federal agencies for damages . . brought under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 . . ."); *see also Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999) (explaining that the Fifth Circuit "has long recognized that suits against the United States brought under the civil rights statutes [42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988] are barred by sovereign immunity"); *United States v. Timmons*, 672 F.2d 1373, 1380 (11th Cir. 1982) (same); *Nghiem v. United States Dept. of Veterans Affairs*, 451 F.Supp.2d 599, 604 (S.D.N.Y. 2006) (stating that "the United States has not consented to be sued under § 1981"); *Norris v. Principi*, 254 F. Supp. 2d 883, 889 (S.D. Ohio 2003) (stating "every court which has addressed the question has concluded that § 1981 does not constitute a waiver of the sovereign immunity for suits against the United States . . .").

Although the Ninth Circuit has not weighed in on § 1983's and § 1985's effect on sovereign immunity, Plaintiff has not pointed to, and the Court has not uncovered, any cases contradicting this consistent line of authority. Accordingly, because the United States had not waived its sovereign immunity for constitutional claims under the civil rights statutes, this court lacks subject matter jurisdiction and Defendant's Motion To Dismiss these statutory civil rights claims as to the United States is **GRANTED.**

### ii. *Bivens* Action:

To the extent the Plaintiff is attempting to assert a *Bivens* claim against the United States, his attempt must fail. *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971) created a remedy for violations of constitutional rights committed by federal officials acting in their individual capacities. As such, *Bivens* does not provide a cause of action against the federal government or its agencies. *Consejo de Desarrollo Economico*

ORDER - 7

*de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007). Moreover, respondeat superior is inapplicable in a *Bivens* action. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir.1991). Therefore, *Bivens* actions can only be maintained against federal agents in their individual capacities. *Vaccaro v. Dobre*, 81 F.3d 854, 857 (9th Cir. 1996). Accordingly, Defendant's Motion To Dismiss Plaintiff's *Bivens* claim as to the United States is **GRANTED**.

### iii. Indian Civil Rights Act:

Presumably, Plaintiff is attempting to bring a claim pursuant to the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1302, et seq., directed against the Spokane Indian Tribe or tribal members, rather than against the United States. However, to the extent the claim is brought against the United States, it must be dismissed. The Indian Civil Rights Act is explicitly directed toward Indian tribes, not the United States. 25 U.S.C. § 1302 ("No Indian tribe in exercising powers of self-government shall – . . ."). Moreover, a habeas petition provides the only remedy for an alleged violation of ICRA. *Means v. Navajo Nation*, 432 F.3d 924, 932 n. 49 (9th Cir. 2005) (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56-59 (1978) (holding that ICRA could not be interpreted to impliedly create a federal cause of action against an Indian tribe or its officers for deprivation of the Act's substantive rights)). Accordingly, to the extent Plaintiff's ICRA claim is directed against the United States, Defendant's Motion To Dismiss is **GRANTED.**

## II. Title VII:

To establish federal subject matter jurisdiction over a Title VII claim, a plaintiff is required to exhaust his administrative remedies prior to filing a complaint. *Lyons v. England*, 307 F.3d 1092, 1103-04 (9th Cir. 2002). In so doing, a plaintiff must comply with regulatory and judicially-imposed exhaustion requirements, including the requirement to pursue administrative remedies with "diligence and good faith," *Jasch v. Potter*, 302 F.3d 1092, 1094 (9th Cir. 2002) (quoting *Greenlaw v. Garrett*, 59 F.3d 994,

ORDER - 8

997 (9th Cir. 1995)), and "[s]ubstantial compliance with the presentment of discrimination complaints to an appropriate administrative agency *is* a jurisdictional prerequisite." *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001) (emphasis in original). "[A]bandonment or failure to cooperate in the administrative process prevents exhaustion and precludes judicial review." *Id.*

Typically, exhaustion is achieved by a federal employee filing an EEO complaint with his agency and complying with the relevant statutory and regulatory requirements to usher his complaint through the EEO and/or EEOC administrative process. *Sloan v. West*, 140 F.3d 1255, 1259 (9th Cir. 1998). Alternatively, however, "when a federal employee claims he or she has been affected by both an 'adverse employment action' and a related Title VII violation, administrative remedies may be exhausted for Title VII purposes by asserting both claims before the [Merit Systems Protection Board]," a quasi-judicial Government agency that adjudicates federal employee appeals of agency personnel action. *Id.* The MSPB may hear "adverse employment actions," that fall within one of five categories: (1) a removal, (2) a suspension for more than 14 days, (3) a reduction in grade, (4) a reduction in pay, or (5) a furlough of 30 days or less. *Id.* In addition, the MSPB has pendent jurisdiction over discrimination claims brought in connection with an appeal of an "adverse employment action." *Id.* Such a claim, where the complainant alleges that he suffered an adverse employment action that was affected, in whole or in part, by unlawful discrimination, is know as a "mixed case complaint." *Id.*

If the MSPB decides it has jurisdiction over the "mixed case complaint," the complaint becomes a "mixed case appeal" appropriately adjudicated by the MSPB. *Id.* at 1260. An initial decision is made by a Merit Board Administrative Judge. *Khanania v. Sec. of Trans.*, 2003 WL 22134855, *1 (N.D. Cal. 2003). Thereafter, an employee may file a petition for review of the initial decision with the three member Merit Board. *Id.*; *see also Sloan*, 140 F.3d at 1260 (stating that "[o]nce the MSPB issues a decision in the case, the employee may file a petition for review to the three member Board of the

ORDER - 9

MSPB"). If the MSPB decides the merits of both the non-discrimination adverse employment action and the discrimination claim, the "mixed case appeal" may then be appealed to a federal district court. *Id.* at 1261 (citing *Ballentine v. Merit Sys. Prot. Bd.*, 738 F.2d 1244, 1246 (Fed. Cir. 1984)).

Based upon the record currently before the court, it appears that Plaintiff failed to pursue any claim with the EEOC despite the allegations contained in Third Amended Complaint. Therein, Plaintiff states that he "asked for counseling and an investigation in a timely manner, but it was not properly pursued by the Equal Employment Opportunity Commission ("EEOC") within the prescribed period of time, thus exhausting his administrative remedies in that area." Moreover, Plaintiff states he "filed a timely Title VII cause of action with the EEOC . . . was offered counseling but his complaint did not result in an investigation as required by § 2000e-5 [and] [m]ore than one-hundred eighty days have expired since his filing, and according to law, his (sic) has an absolute right to file in Federal Court." Defendant refutes these allegations by attaching the declaration of Fredericka J. Joseph, Director of the Office of Equal Opportunity/Civil Rights Programs, GS-15, Bureau of Indian Affairs, wherein she states that a record review failed to produce a formal EEO complaint filed by the Plaintiff during the applicable period. (Joseph Decl. ¶ 4).

Rather than pursuing the EEOC route, it appears that Plaintiff took his complaint directly to the MSPB. According to the declaration of Richard L. Garcia, a Human Resources Specialist with the United States Department of the Interior, Bureau of Indian Affairs, Southwest Regional Office, a review of the records regarding the Plaintiff's case revealed that on March 5, 2004, Plaintiff brought a timely appeal to the MSPB. (Garcia Decl. ¶ 11-12). Then, on July 8, 2004, Administrative Judge John W. Tapp issued an initial decision, affirming the agency's removal action. (Id. at ¶ 14). Plaintiff was advised of his right to petition for review before the full MSPB Board, and that it must be filed before August 12, 2004. (Id. at 15). It appears Plaintiff never filed a petition for

ORDER - 10

review, thereby abandoning the administrative process and demonstrating a lack of diligence. As such, Plaintiff failed to exhaust his administrative remedies. *See Greenlaw*, 59 F.3d at 997 (stating that "[a] plaintiff may not cut short the administrative process prior to its final disposition, for upon abandonment a claimant fails to exhaust administrative relief and may not thereafter seek redress from the courts"). Accordingly, Defendant's Motion To Dismiss Plaintiff's Title VII claim against the United States is **GRANTED.**

## III. Civil Service Reform Act:

The United States argues that this court lacks subject matter jurisdiction over Plaintiff's claims relating to his employment – such as being retaliated against for conducting an investigation of fellow BIA officers' alleged criminal conduct by being wrongfully reassigned to Wyoming and being wrongfully terminated – because the claims needed to be pursued under the Civil Service Reform Act ("CSRA"). The CSRA, 5 U.S.C. § 2302 et seq., constrains a federal employee's ability to bring certain claims to federal court. If the conduct that Plaintiff challenges falls within the scope of the CSRA's "prohibited personnel practices," then the CSRA's administrative procedures are his only remedy, and the district court lacks subject matter jurisdiction. *Mahtesian v. Lee*, 406 F.3d 1131, 1134 (9th Cir. 2005) (citing *Orsay v. United States Dept. of Justice*, 289 F.3d 1125, 1128 (9th Cir.2002)); *see also Saul v. United States*, 928 F.2d 829, 835-43 (9th Cir.1991) (holding the CSRA precludes both constitutional and state common-law tort claims). Moreover, while it may seem inequitable, even if no remedy is available under the CSRA, a federal employee cannot bring the claim if the acts complained of fall within the scope of the CSRA. *Orsay*, 289 F.3d at 1128-29 (citing *Collins v. Bender*, 195 F.3d 1076, 1079 (9th Cir. 1999); *see also Saul*, 928 F.2d at 840 (agreeing with other circuits that "[t]he preclusive effect of the CSRA sweeps beyond the contours of its remedies").

The CSRA defines "prohibited personnel practices" as any "personnel action"

taken for an improper motive by some who has authority to take personnel actions. *Mahtesian*, 406 F.3d at 1134. A "personnel action" is defined as "any appointment, promotion, disciplinary or corrective action, detail, transfer, or reassignment, reinstatement, restoration, reemployment, performance evaluation, decision concerning pay or benefits and the like, decision to order psychiatric examination, and any other significant change in duties, responsibilities, or working conditions." *Orsay*, 289 F.3d at 1131 (citing 5 U.S.C. § 2302(a)(2)(A)(i)-(xi)). The CSRA's language is broad and courts take an expansive reading of the phrase "personnel action." *Saul*, 928 F.2d at 834. However, if the alleged conduct does not fall within one of the CSRA's eleven categories of "personnel action," other causes of action are not preempted. *See Bush v. Lucas*, 462 U.S. 367, 386 n. 28 (1983) (wiretapping, warrantless searches, or uncompensated takings); *Orsay*, 289 F.3d at 1131 (aiming a loaded weapon at a person); *Collins*, 195 F.3d at 1079-80 (warrantless search of DEA agent's home for privetely owned firearms); *Brock v. United States*, 64 F.3d 1421, 1424-25 (9th Cir. 1995) (rape and physical abuse).

The conduct of which Plaintiff complains, being transferred and being terminated, constitutes "personnel action" as it falls under the category of "detail, transfer, or reassignment" and more generally under "significant change in duties, responsibilities, or working conditions." 5 U.S.C. §§ 2302(a)(2)(A)(iv) & (xi). Moreover, in as much as Plaintiff alleges that Defendant engaged in this conduct in retaliation for him investigating the reported criminal conduct of other BIA officers, Plaintiff is contending that Defendant engaged in these personnel actions for reasons prohibited under the CRSA. *See Orsay*, 289 F.3d at 1129-30 (stating that "[t]he CSRA includes retaliation as a prohibited reason for taking a personnel action"). The CSRA specifically prohibits taking personnel action "because of any disclosure of information by an employee . . . which the employee . . . reasonably believes evidences a violation of any law, rule or regulation . . ," 5 U.S.C. § 2302(b)(8). Accordingly, Plaintiff's claim that he was wrongfully retaliated against by being transferred from the Spokane Indian Reservation

and then terminated from his position with the BIA is preempted by the CSRA. Accordingly, the United States' Motion To Dismiss those claims is **GRANTED.**

**IV.  Claim Impliedly Pled Under the Federal Tort Claims Act:**

The Third Amended Complaint does not set forth a separate cause of action under the Federal Tort Claims Act ("FTCA"), although such a claim is mentioned in terms of this court's jurisdiction.  Thus, the United States argues that to the extent any tort claim is not covered by the CSRA, it is insufficiently pled and fails to state a claim upon which relief can be granted.  Despite the United States' contention that the only factual allegation of tortious conduct is that Commander Naranjo was "cited" by the United States Attorney's Office for "negligent supervision," Plaintiff also alleges facts that would support claims for false arrest, false imprisonment, and malicious prosecution. Plaintiff alleges Defendants pressured tribal prosecutors to file a wrongful criminal complaint in Spokane Tribal Court that resulted in the issuance of a tribal arrest warrant. Further, Plaintiff alleges he was arrested by members of the Colville Tribal Police, was held in the Okanogan County Jail before being transferred to the Federal Detention Center located on the Spokane Indian Reservation, where he eventually succeeded in his habeas petition and was released.  Therefore, even under the Supreme Court's recent stricter pleading standard under *Twombley* (supra),  Plaintiff's complaint has pled "enough facts to state a claim to relief that is plausible" for false imprisonment and malicious prosecution.  However, Plaintiff's claim for false arrest must be dismissed because Plaintiff alleges he was arrested by non-Defendant tribal police, rather than federal officers or any named Defendant.

Moreover, these claims are not time-barred by the FTCA.  The Act provides two limitations periods.  First, the initial administrative claim must be brought within two years of the time the claim accrues.  28 U.S.C. § 2401(b).  The Department of the Interior received Plaintiff's administrative tort claim on June 16, 2005, thereby preserving his claim for events occurring after June 16, 2003, such as being imprisoned and prosecuted.

ORDER - 13

Second, the action in the district court must be brought within six months of notice of denial of administrative claim. 28 U.S.C. § 2401(b). The letter denying Plaintiff's claim is date-stamped December 5, 2005, and Plaintiff filed his Second Amended Complaint adding the United States as a defendant and mentioning a claim under the FTCA, on December 30, 2005. Accordingly, Plaintiff's claims for false imprisonment and malicious prosecution are not time-barred.

Finally, these claims are not barred by the Federal Employees Compensation Act ("FECA"), nor by the intentional tort exception to the FTCA, as argued by the United States. First, by its very terms, the remedies provided under FECA are the exclusive remedies for federal employees against the United States for *job-related* injury or death. *See, e.g., Figueroa v. United States*, 7 F.3d 1405, 1407 (9th Cir. 1993) (citing 5 U.S.C. § 8116(c)). Also, a claim for compensation must result from physical injury. Emotional injury, "divorced from any claim of physical harm," is outside FECA's scope. *Moe v. United States*, 326 F.3d 1065, 1068 (9th Cir. 2003) (citing *Sheehan v. United States*, 869 F.2d 1168, 1174 (9th Cir. 1990)). Therefore, while Defendant could make a colorable argument that Plaintiff's imprisonment and prosecution were job-related, FECA is inapplicable because Plaintiff has never alleged that these alleged torts resulted in physical injury.

Second, in direct contradiction to Defendant's argument, the intentional tort exception to the FTCA, 28 U.S.C. § 2680(h), "expressly subjects the United States to suit for claims that arise out of one of the specified, intentional torts, and that allege intentionally tortious 'acts or omissions of investigative or law enforcement officers.'" *Orsay v. United States Dept. of Justice*, 289 F.3d 1125, 1133 (9th Cir. 2002) (noting that Congress chose "to single out investigative and law enforcement officers from other federal employees" because their "authority to use force and threaten government action carries with it the risk of abuse, or the risk of intentional tortious conduct"). The Act provides an exception for:

> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h).  BIA officers are law enforcement officers as defined by the FTCA, as they are "empowered by law to execute searches, to seize evidence, or make arrests for violations of Federal law."   Moreover, allegations of false imprisonment and malicious prosecution fall within the Act's law enforcement proviso, and thus the intentional tort exception does not apply.

Accordingly, Defendant's Motion To Dismiss Plaintiff's FTCA claims against the United States must be **GRANTED in part** and **DENIED in part.**  Plaintiff's claim for false arrest must be dismissed, however, the Motion To Dismiss Plaintiff's claims for false imprisonment or malicious prosecution must be Denied.

## SUMMARY OF CONCLUSIONS

(1)  Defendant United States of America's Motion To Dismiss Plaintiff's §§ 1981 and 1985, *Bivens*, and Indian Civil Rights Act claims against the Government is GRANTED.

(2) Defendant United States' Motion To Dismiss Plaintiff's Title VII claim against the United States is **GRANTED**.

(3)  Defendant United States' Motion To Dismiss Plaintiff's employment-related claims that are preempted by the CSRA is **GRANTED**.

(4) Defendant United States' Motion To Dismiss Plaintiff's FTCA claims is **GRANTED in part** and **DENIED in part**.  Plaintiff's FTCA claim for false arrest shall be dismissed, but the claims for false imprisonment and malicious prosecution may proceed.

ORDER - 15

1 **IT IS SO ORDERED.** The Clerk of this court shall enter this Order and forward
2 copies to counsel.
3 **DATED** this 11th day of June 2007.

4                               s/ Justin L. Quackenbush
                            JUSTIN L. QUACKENBUSH
5                 SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 16